United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOANNA CHENG,
Plaintiff,
v.
NORDSTROM, INC.,
Defendant.

Case No. 26-cv-02431-CRB

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Defendant Nordstrom, Inc. moves to compel arbitration in this case about allegedly deceptive pricing. See Mot. (dkt. 14). Because the Court concludes that Plaintiff Joanna Cheng agreed to Nordstrom's Terms and Conditions (Terms), and that those Terms include a valid arbitration agreement that encompasses the dispute at issue, the Court GRANTS the motion.

## I. BACKGROUND

### A. Purchase

On January 20, 2026, Cheng purchased a Little Mermaid nightgown from Nordstrom Rack's website at NordstromRack.com. Compl. (dkt. 1) ¶ 26. The nightgown indicated, by way of a "Comparable Value" label, that the original price was $42.00, but that number was crossed out and the for-sale price was $20.87, suggesting a 50% savings. Id. Cheng alleges that the nightgown does not really sell for $42.00 anywhere. Id. ¶ 28. Accordingly, Cheng alleges that Nordstrom's "deceptive reference pricing representations" caused her to pay a premium over the actual market value of the nightgown. Id. ¶ 29.

### B. Arbitration Agreement

Users can order clothes from Nordstrom through its website, which they can access

using a computer or smartphone. Savage Decl. (dkt. 14-2) ¶ 2. Or users can order clothes through Nordstrom's app, which they can download in the Apple app store. Id. Both the website and the app are governed by Nordstrom's Terms. See Lefebvre Decl. (dkt. 14-1) ¶ 2, Ex. A. The Terms were last updated in February 2024. Lefebvre Decl. ¶ 2.

The Terms include an arbitration agreement. See id. Ex. A at 001 ("THESE TERMS INCLUDE A DISPUTE RESOLUTION SECTION THAT INCLUDES AN ARBITRATION AGREEMENT."). The arbitration agreement provides in part:

> Any claim, controversy, or dispute arising out of or relating to these Terms, your access or Use of our Site or any products or Services offered by or purchased from Nordstrom through our Site or store, or any aspect of your relationship with Nordstrom, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory . . . will be resolved through binding individual arbitration[.]

Lefebvre Decl. Ex. A at 006. The word "Dispute" is "given the broadest possible meaning permitted by law," and specifically includes "claims relating to advertising." Id. The arbitration agreement further provides that the arbitrator shall decide all issues except for: "(a) issues that are reserved for a court in these Terms; (b) issues that relate to the scope, validity, and enforceability of the arbitration agreement, class action waiver, or any of the provisions of this Dispute Resolution section; and (c) issues that relate to the arbitrability of any Dispute." Id. Finally, the arbitration agreement states:

> If, after exhaustion of all appeals, any of these prohibitions on non-individualized injunctive or declaratory relief and class, collective, consolidated, private attorney general, or representative proceedings are found to be unenforceable with respect to a particular claim <u>or request for relief (such as a request for public injunctive relief</u>), then such claim or request for relief will be decided by a court of competent jurisdiction, after all other claims and requests for relief are arbitrated.

Id. at 008 (emphasis added).

Nordstrom alerts users to the Terms at two phases of their shopping experience. "Before a user signs in to their account on the Website via a mobile device or on the Nordstrom Rack App . . . Nordstrom presents the user with a hyperlink to the Terms and notifies the user that, by signing in, the user agrees to the Terms." Lefebvre Decl. ¶¶ 3, 4

(app), 5 (website). Those sign-in pages have remained the same since February 2024. Id. ¶¶ 4, 5. Nordstrom also submitted evidence that when a user places an order on the app, the user receives a notice below the "Place Order" button stating that by placing an order, the user agrees to the Terms. Id. ¶ 6.

### C. Cheng Exposure to Terms

Nordstrom contends that Cheng applied for and received a Nordstrom credit card in 2004 and that she is a "Nordy Club member" who has purchased hundreds of items from Nordstrom Rack. Savage Decl. ¶ 5. Nordstrom asserts that between February 2024 and January 20, 2026, Cheng signed into her Nordstrom Rack account either on the website or the app at least 14 times, see id. ¶ 6 (listing sign-in dates), and placed 25 orders on the app between February 2024 and January 20, 2026, see id. ¶ 7 (listing purchase dates).

### D. Procedural Posture

Cheng brings a putative class action based on Nordstrom's "Comparable Value" pricing practice, alleging that Nordstrom engages in this practice "across its entire product catalog" and in its stores as well as online. Compl. ¶¶ 30–32. The complaint includes causes of action for violation of (1) California's False Advertising Law (FAL), (2) California's Unfair Competition Law (UCL), and (3) California's Consumer Legal Remedies Act (CLRA). See id. ¶¶ 40–63. For all three claims, Cheng seeks both restitution and injunctive relief; for the CLRA, she also seeks actual damages, punitive damages, and attorneys' fees and costs, id. ¶ 63; and for the UCL claim she also seeks disgorgement, id. ¶ 55.

Nordstrom moves to compel arbitration of Cheng's case, relying on the arbitration agreement in its Terms. See Mot.

## II. LEGAL STANDARD

Contracts relating to a commercial transaction are subject to the Federal Arbitration Act. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity." 9 U.S.C. § 2. The

grounds for invalidating an arbitration agreement include "generally applicable contract defenses, such as fraud, duress, or unconscionability." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citation omitted).

"[A]ny party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration." Magana v. DoorDash, Inc., 343 F. Supp. 3d 891, 898 (N.D. Cal. 2018) (citing 9 U.S.C. §§ 3–4). At bottom, a court must compel arbitration if it finds that (1) a valid arbitration agreement exists and (2) the agreement applies to the dispute at issue. Chiron, 207 F.3d at 1130.

## III. DISCUSSION

Nordstrom argues that the Court should compel arbitration because a valid agreement exists and the agreement applies to the dispute at issue. See Mot. at 8–15. Cheng does not really challenge the second point—which would be difficult, given the arbitration agreement's broad definition of "dispute"—but does argue that the agreement is invalid. See Opp'n (dkt. 15) at 6–20. Specifically, she argues that (A) she did not agree to the agreement, (B) her claims are not arbitrable, and (C) the agreement is unconscionable. Id.[1]

### A. Agreement to Terms

Cheng argues that Nordstrom failed to carry its burden of proving that she assented to the arbitration agreement. See id. at 6. She asserts that the interface she actually used to buy the nightgown on the app[2] enabled her to click "Place Order" at the top right of the screen, where there is no advisory notice about the Terms, rather than with the "large blue 'Place Order' button at the bottom" of that same screen, where there is. Id.; Cheng Decl.

[1] She also argues that California law governs the agreement, id. at 13–15, but Nordstrom does not challenge that point, see Mot. at 8 ("the Court can apply either Washington or California law"); Reply (dkt. 16) (discussing California Supreme Court case raised by Cheng without arguing that California law does not apply).

[2] She states that "Since 2022, I have made all of my online purchases from Nordstrom Rack through the App, and I have not used the NordstromRack.com website to make any purchase from Nordstrom Rack." Cheng Decl. ISO Opp'n (dkt. 15-1) ¶ 2. This statement contradicts the complaint. See Compl. ¶ 26 ("On or about January 20, 2026, [Cheng] purchased [the nightgown] from Nordstrom Rack's online website at NordstromRack.com.").

ISO Opp'n (dkt. 15-1) ¶ 4. Cheng attaches to her declaration images of the "Review Order" screen from the Nordstrom Rack app, which she captured from her device on May 28, 2026, but which are "consistent with [her] recollection of the screen as [she] encountered it when [she] placed [her] order on January 20, 2026." Cheng Decl. ISO Opp'n ¶ 3, Ex. 1.[3] Nordstrom responds by noting that this evidence, even if credited, does not negate Nordstrom's evidence about Cheng's exposure to the Terms at sign-in and at every other purchase other than the January 20, 2026 purchase to which her declaration is limited. Reply at 2–6.

The Court need not reach the conspicuousness of the Terms during Cheng's various purchases, because Cheng agreed to the Terms repeatedly when she signed into her account. Cheng argues that signing into her account does not manifest an intent to enter an agreement to arbitrate, just "an intent to use the account." Opp'n at 11; Sur-Reply (dkt. 21-2) at 2. Not so. When users sign into their accounts on the app, Nordstrom presents them with a notice that states "By tapping Next, you agree to our Privacy Policy and Terms & Conditions," with the terms "Privacy Policy" and "Terms & Conditions" set apart and hyperlinked. See Lefebvre Decl. ¶ 4. Similarly, when users sign into their account on the website, Nordstrom presents them with a notice that states "By tapping Next, you agree to our Privacy Policy and Terms & Conditions," with the terms "Privacy Policy" and "Terms & Conditions" set apart and hyperlinked. See id. ¶ 5. The notice on the sign-in pages is reasonably conspicuous in that "a reasonably prudent Internet user would have seen it." See id. ¶¶ 4, 5; Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 856 (9th Cir. 2022). Moreover, the sign-in pages have not changed since February 2024. Id. ¶¶ 4, 5. And, Cheng signed into her account "at least 14 times" since February 2024. See

[3] Nordstrom cries foul about the images Cheng attaches, suggesting that she deliberately cut off the page in order to omit the underlined hyperlink to the Terms. See Reply at 6–7. Cheng does not actually answer Nordstrom's accusation, and instead objects to Nordstrom's "new evidence" "submit[ted] for the first time on reply." See Objection (dkt. 19) at 1–2. But how could Nordstrom respond to Cheng's app purchase page, submitted in her opposition, if not in its reply? The objection is DENIED. As for the substance of the dispute over the missing hyperlinks, the Court abstains, as its holding does not depend on how conspicuous the Terms were on the app purchase page.

United States District Court
Northern District of California

Savage Decl. ¶ 6. Cheng's repeated argument that Nordstrom's evidence is insufficient, because it consists only of "exemplars" and not "the screen Ms. Cheng actually saw," is unpersuasive. See Opp'n at 1, 3–4, 7–8. Nordstrom's uncontradicted evidence is the type courts routinely accept. See, e.g., Singh v. Adobe Inc., 797 F. Supp. 3d 1038, 1045–46 (N.D. Cal. 2025).

Accordingly, the Court concludes that by signing into her account, Cheng agreed to the Terms, and therefore also the arbitration agreement. See Dohrmann v. Intuit, Inc., 823 Fed. Appx. 482, 484 (9th Cir. 2020).

**B. Arbitrability of Claims**

Cheng argues next that even if an agreement existed, it cannot waive her right to seek public injunctive relief, and all of her claims seek (among other things) public injunctive relief. See Opp'n at 15–18 (citing McGill v. Citibank, N.A., 2 Cal. 5th 945 (2017)). But Cheng does not appear to have standing to seek public injunctive relief. See Stover v. Experian Holdings, Inc., 978 F.3d 1082, 1087 (9th Cir. 2020) (requiring allegation that there is a threat of future harm). Even if she did, the arbitration agreement here provides that if "any of these prohibitions on non-individualized injunctive . . . relief . . . are found to be unenforceable with respect to a particular . . . request for relief (such as a request for public injunctive relief), then such claim or request for relief will be decided by a court of competent jurisdiction, after all other claims and requests for relief are arbitrated." Lefebvre Ex. A at 008 (emphasis added). That language does not run afoul of McGill. See Blair v. Rent-A-Center, Inc., 928 F.3d 819, 831 (9th Cir. 2019) ("Parties are welcome to agree to split decisionmaking between a court and an arbitrator in this manner."); Stout v. Grubhub, Inc., No. 21-cv-04745-EMC, 2021 WL 5758889, at *9–*10 (N.D. Cal. Dec. 3, 2021) (same).

Accordingly, the Court can, as in Stout, compel arbitration on Cheng's claims while retaining jurisdiction and staying her request for public injunctive relief. See Stout, 2021 WL 5758889, at *11. Cheng's request for public injunctive relief does not make her case not arbitrable.

### C. Unconscionability

Finally, Cheng argues that the arbitration agreement is unconscionable and illusory. See Opp'n at 18–20.

Under California law, "the party opposing arbitration bears the burden of proving . . . unconscionability." Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (2012). That party "must demonstrate that the contract . . . is both procedurally and substantively unconscionable." Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1260 (9th Cir. 2017). Procedural unconscionability and substantive unconscionability "need not be present in the same degree." Id. (quoting Sanchez v. Valencia Holding Co., LLC, 61 Cal. 4th 899, 910 (2015)). Instead, California courts apply a "sliding scale" analysis in making determinations of unconscionability where "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id.

The first inquiry in determining procedural unconscionability is whether an agreement is a contract of adhesion, in which a party with superior bargaining strength presents terms on a take-it-or-leave-it basis. Poublon, 846 F.3d at 1260–61. The arbitration agreement here is likely a contract of adhesion. See Opp'n at 18. Yet an adhesive contract without more is only minimally procedurally unconscionable. Poublon, 846 F.3d at 1261–62. To find more than minimal procedural unconscionability, courts look to whether there is oppression or surprise. Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1280 (9th Cir. 2006). Cheng does not identify either. See Opp'n. Accordingly, the arbitration agreement is only minimally procedurally unconscionable.

Substantive unconscionability addresses whether the terms of the agreement are so "overly harsh" or "one-sided" that they "shock the conscience." Poublon, 846 F.3d at 1261 (citing Sanchez, 61 Cal. 4th at 912). A court will not find "a simple old-fashioned bad bargain" unconscionable; the terms must be "unreasonably favorable to the more powerful party." Id. Cheng argues that the arbitration agreement is substantively

unconscionable because it bars consumers from a class or representative proceeding while allowing Nordstrom to participate in a class-wide settlement, it hampers a user's ability to access public injunctive relief, and it "erects a multi-tiered informal-resolution and mass-arbitration regime . . . that operates to delay and deter claims." Opp'n at 19. But Cheng is incorrect about settlement: the arbitration agreement allows both "parties . . . the right to participate in a class-wide settlement." See Lefebvre Ex. A at 009. The Court has already addressed the applicability of McGill, and in any case, "the unenforceability of the waiver of one's right to seek public injunctive relief does not make … [an] arbitration agreement unconscionable or otherwise unenforceable." Keebaugh v. Warner Bros. Ent., 100 F.4th 1005, 1023 (9th Cir. 2024). And a "multi-tiered informal-resolution" system here consists of a 60-day period in which the parties "agree[] to negotiate in good faith in an attempt to resolve the Dispute," after which, if they are unsuccessful, they can arbitrate. See Lefebvre Ex. A at 007. "Pre-arbitration dispute resolution procedures are commonplace and can be both 'reasonable and laudable.'" Bielski v. Coinbase, Inc., 87 F. 4th 1003, 1014 (9th Cir. 2023) (quoting Serpa v. Cal. Sur. Investigations, Inc., 215 Cal. App. 4th 695 (2013)).

Cheng adds that the arbitration agreement reserves the power to Nordstrom to rewrite the agreement unilaterally, which makes the agreement both substantively unconscionable and illusory. Opp'n at 19. And, she argues, the arbitration's cost-shifting provisions of Rule 68 of the Federal Rules of Civil Procedure are also unconscionable. Id. But Cheng would have to pay Nordstrom's costs in court if, per Rule 68, Nordstrom made a settlement offer, Cheng declined, and then she received less; there is nothing different about it applying in arbitration. And Nordstrom's ability to modify the agreement unilaterally does not have the significance that Cheng urges. See Gonzalez v. Interstate Cleaning Corp., No. 19-cv-07307-KAW, 2020 WL 1891789, at *6 (N.D. Cal. April 16, 2020) ("California courts have made clear that unilateral modification terms are not substantively unconscionable because 'the implied covenant of good faith and fair dealing limits [the party with the unilateral modification right]'s authority to unilaterally modify

United States District Court
Northern District of California

the arbitration agreement and saves the agreement from being illusory and unconscionable.'") (quoting Serpa v. Cal. Surety Investigations, Inc., 215 Cal. App. 4th 695, 708 (2013)).

Accordingly, Cheng has not demonstrated that the arbitration agreement is either unconscionable or illusory.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion and STAYS the case pending arbitration.

**IT IS SO ORDERED.**

Dated: August 28, 2026

CHARLES R. BREYER
United States District Judge